UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

TONY GONZALEZ,
    Plaintiff,

v.

PATRICIA COYNE-FAGUE,
    Defendant.

C.A. No. 22-cv-174-JJM-PAS

## ORDER

Tony Gonzalez seeks to have this Court vacate his 2018 convictions for first-degree murder, assault with intent to commit a felony (murder), and two counts of discharging a firearm while committing a crime of violence. He asserts four grounds in support of his claim for habeas relief under 28 U.S.C. § 2254. ECF No. 1 at 1, 5-11. He raises issues involving the racial composition of the jury venire, the denial of his motion to suppress, a *Brady v. Maryland* evidence violation, and the state court's failure to declare a mistrial. The State moves to dismiss Mr. Gonzalez's petition challenging each of his four grounds. ECF No. 12.[1]

### A. FACTS

A grand jury indicted Tony Gonzalez for first-degree murder, assault with intent to commit murder, discharging a firearm while committing a crime of violence (murder), and discharging a firearm while committing a crime of violence (assault

---

[1] Mr. Gonzalez also filed a Motion for Summary Judgment, but because the Motion to Dismiss is dispositive, the Court need not address it and therefore DENIES it as moot. ECF No. 10.

with intent to commit murder). A jury found him guilty of all counts. The Rhode Island Supreme Court vacated Mr. Gonzalez's convictions and remanded his case for a new trial after concluding that the trial court erred in admitting evidence seized following Mr. Gonzalez's warrantless arrest. *State v. Gonzalez*, 136 A.3d 1131 (R.I. 2016) ("*Gonzalez I*"). After a second jury trial, a jury again found Mr. Gonzalez guilty of all charges. This time, the Rhode Island Supreme Court affirmed Mr. Gonzalez's convictions. *State v. Gonzalez*, 254 A.3d 813 (R.I. 2021) *cert. denied,* 142 S. Ct. 1388 (2022) ("*Gonzalez II*"). Mr. Gonzalez then petitioned for issuance of a writ of certiorari in the United States Supreme Court, which the Supreme Court denied. Mr. Gonzalez filed the instant federal habeas petition. ECF Nos. 1, 2.

### B. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, restricts federal court review of state court convictions and sentences. Before a federal court can reach the merits of a habeas claim, the petitioner "must have fairly presented his claims to the state courts and must have exhausted his state court remedies." *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002) (citing 28 U.S.C. § 2254(b)(1)(A)). When a federal court reaches the merits of a habeas claim, the applicable standard of review depends on whether the state court adjudicated the petitioner's claim on the merits. *See, e.g., Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir. 2006). Where a claim "was adjudicated on the merits in State court proceedings," a federal court may grant habeas relief only if the State court's "adjudication of the claim" either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). When the state court did not adjudicate the petitioner's claim on the merits, the federal court's review of that claim is de novo. *Norton v. Spencer*, 351 F.3d 1, 5 (1st Cir. 2003). Factual determinations made by the state court are presumed to be correct, with the petitioner bearing "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## C. ANALYSIS

### 1. Jury Venire

Mr. Gonzalez asserts that the state trial judge erred when he inappropriately addressed his objection to the jury venire. He claims that the "entire jury venire was 100% White, and that the county in which the venire was drawn (Kent County) is 5.7% Hispanic." ECF No. 10 at 8.

The Rhode Island Supreme Court adjudicated this issue on the merits. They explained the issue as follows:

> [Mr. Gonzalez pointed to] census data indicating "that a mere 3 to 4.6 percent of the population of Kent County * * * is Hispanic or Latino and only 1.9 percent of said population is of two or more races." * * * Defense counsel, citing scant caselaw, also raised a concern about a constitutionally under-representative jury. He noted that defendant is Hispanic, a member of a distinctive community, and he cited the census data for Kent County. However, counsel acknowledged that he had no evidence, at that time, prior to voir dire, to suggest that Hispanic individuals were systematically excluded from the jury selection process in this case. The trial justice denied defendant's motion.

*Gonzalez II*, 254 A.3d at 818.

The Rhode Island Supreme Court then analyzed Mr. Gonzalez's constitutional claims and ruled as follows:

> As this Court has recognized on numerous occasions, defendants have a right under the Sixth Amendment to select a petit jury from a fair cross-section of the community. To demonstrate a prima facie violation of the fair cross-section requirement, a defendant must establish:
>
>> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.
>
> This Court takes seriously any alleged violation of the fair cross-section requirement. When presented with a challenge to the array of a jury, it is critically important that the trial justice undertakes the appropriate analysis under *Duren* and addresses the motion to discharge the jury accordingly. Our careful review of the record in this case reveals that the trial justice repeatedly and explicitly denied the motion to change venue, but that he did not specifically address the motion to discharge the jury, despite defendant's expressed concerns about the jury makeup.
>
> However, it is also clear from the record that defendant failed to establish a prima facie violation of the fair cross-section requirement. Although there is no dispute that defendant is Hispanic and thus a member of a distinctive community, it was defendant's burden to provide evidence that indicates that the representation of Hispanic individuals in the venire[ ] from which [his jury was] selected is not fair and reasonable in relation to the number of such persons in the community[.] Even accepting the census data for Kent County as accurate, counsel's observation that there did not appear to be any Hispanic jurors in the pool was not sufficient. Rather, to meet the second prong under *Duren*, defendant was required to introduce competent evidence—data—regarding the makeup of the venire from which his jury was selected. Without such data, or an appropriate statistical analysis of that data to indicate disparity, the trial justice could not properly assess defendant's challenge to the array.
>
> Moreover, it was also defendant's burden to introduce evidence establishing that any under-representation of Hispanic jurors in Kent

County was caused by a systematic exclusion of Hispanic individuals in the jury selection process.

*Gonzalez II*, 254 A.3d at 819–20 (citations and quotations omitted).

Because the Rhode Island Supreme Court adjudicated this issue on the merits, the federal court's review is limited to deciding whether it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Rhode Island Supreme Court correctly stated that "it was defendant's burden to introduce evidence establishing that any under-representation of Hispanic jurors in Kent County was caused by a systematic exclusion of Hispanic individuals in the jury selection process." Because Mr. Gonzalez failed to introduce such evidence, the court's conclusion in *Gonzalez II* that he did not meet his burden was consistent with a reasonable application of federal constitutional law. Mr. Gonzalez's claim for habeas relief on this ground fails.

### 2. *Motion to Suppress Cell Phone Data*

Mr. Gonzalez next claims that the state trial court erred in denying his motion to suppress evidence that the police obtained from his cell phone because the police officers violated his Fourth Amendment rights by accessing his cell phone before obtaining a warrant. As the Rhode Island Supreme Court explained:

> After hearing testimony by two officers involved in defendant's arrest and the subsequent search of his cell phone, the trial justice found that police obtained the cell phone as a result of defendant's unlawful arrest.

> The trial justice therefore suppressed the cell phone along with any information discovered on the cell phone. However, he denied the motion to suppress with respect to testimony of the individuals discovered through the cell-phone records, finding that information to be admissible under the independent source doctrine. The trial justice cited testimony by one of the officers, who explained that he "learned of [the] identities by * * * taking the phone number that was given to him by Ms. Delomba very early in the investigation and bringing that to Metro PCS[,]" which, in turn, generated a call log; police were able to search the internet to identify subscribers for those numbers.

*Gonzalez II*, 254 A.3d at 817.

After reviewing the record, the Rhode Island Supreme Court analyzed the constitutional issues by stating:

> there is no question that defendant's arrest was illegal, as this Court decided in *Gonzalez*. *See Gonzalez*, 136 A.3d at 1154. Accordingly, our analysis is limited to considering whether the identity and testimony of the individuals that Mr. Gonzalez sought to suppress would have been discovered independent of the illegal arrest and, in turn, the discovery of defendant's cell phone on his person."

*Gonzalez II*, 254 A.3d at 817. The court highlighted that "'[t]he exclusionary rule, which includes within its scope certain evidence derived from illegal police activity, does not apply when the government learns of evidence from a source independent of the original violation.'" *Id.* (quoting *State v. Ducharme*, 601 A.2d 937, 942 (R.I. 1991)).

The court then analyzed the facts under the independent source rule to determine whether Mr. Gonzalez's constitutional rights were violated. It found:

> After our independent review of the record, we cannot say that the trial justice's findings were clearly erroneous. The testimony by the officers involved in the search supports the finding that, although the police learned the identity of certain individuals after searching defendant's cell phone itself, they had lawfully obtained a call log pursuant to an administrative warrant served on Metro PCS using the phone number

6

>given to them by Ms. Delomba early in the investigation. Using various internet search engines, the police managed to assign identities to the phone numbers that appeared in the call log. As such, it is clear to this Court that the identity, and subsequent testimony, of the individuals that Mr. Gonzalez sought to suppress were obtained independently from the illegal seizure of his cell phone and, therefore, the trial justice did not err in denying defendant's motion to suppress.

*Gonzalez II*, 254 A.3d at 817–18.

The Court finds that the Rhode Island Supreme Court's opinion reviewing the denial of Mr. Gonzalez's motion to suppress after independently reviewing the record was consistent with a reasonable application of federal constitutional law. Therefore, his claim for habeas relief fails on this ground.

### 3. Brady Violation

Mr. Gonzalez's third claim in support of his habeas petition involves recordings of a controlled phone call that Mr. Gonzalez's brother made to him before his arrest. Mr. Gonzalez suggests that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not providing him with a copy of the recording of that call. The Rhode Island Supreme Court denied Mr. Gonzalez's *Brady* claim because he did not preserve the issue for review under its "well-settled raise-or-waive rule . . . ." *Gonzalez II*, 254 A.3d at 821-22.

The independent and adequate state law or procedural default doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Lynch v. Ficco*, 438 F.3d 35, 45 (1st Cir. 2006) (citation omitted). Federal habeas review is barred "unless the prisoner can demonstrate cause for the

7

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Because Mr. Gonzalez failed to raise this issue with the state court, he cannot raise it before this Court for consideration in his habeas case.

### 4. Failure to Declare Mistrials

Finally, Mr. Gonzalez challenges the trial court's denial of two mistrial motions that he made after the victim briefly and inadvertently referenced Mr. Gonzalez's first trial two times when testifying. As the Rhode Island Supreme correctly analyzed this matter:

> Our caselaw does not require a trial justice to pass a case at each instance a witness offers a prejudicial statement against a criminal defendant. The trial justice enjoys a ringside seat at the trial and therefore is in the best posture to determine whether a witness's inappropriate remark or action has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence.
>
> We cannot say that the trial justice abused his discretion or was clearly wrong by declining to declare a mistrial based on [the victim's] two references to the first trial. After [the victim] referenced the trial the first time and defense counsel objected and moved to pass the case at sidebar, the trial justice carefully deliberated and ultimately determined that any potential prejudice that may have resulted could be cured with an appropriate instruction to the jury. He did so only after a lengthy discussion with counsel for Mr. Gonzalez and the state about the effect, if any, that the witness's statement could have had on the jury based on the trial justice's own perception and observations.
>
> After [the victim] referenced the first trial for a second time, the trial justice dismissed the jury for lunch, entertained arguments from the parties, and, again, determined that any prejudice that might have resulted from the reference was not incurable. Of course, it is the trial justice who, because of his ringside seat[,] is in the best position to make

8

> such a determination. It is clear from our review of the record that the trial justice was sensitive to any effect that [the victim's] references may have had on the jury, but that he ultimately found that any effect was negligible.

*Gonzalez II*, 254 A.3d at 821 (citations and quotations omitted). The Court finds that the state court's rulings on Mr. Gonzalez's motions for mistrials reasonably applied federal law on this issue such that his habeas motion on this ground fails.

### D. CONCLUSION

The Rhode Island state court's adjudication of Mr. Gonzalez's claim did not result in a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" nor did it result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." For those reasons, the Court GRANTS the State's Motion to Dismiss (ECF No. 12), DENIES AS MOOT his Motion for Summary Judgment (ECF No. 10), and dismisses Mr. Gonzalez Petition for Habeas Relief. ECF No. 1.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

August 19, 2022